IN THE DISTRICT COURT OF EASTERN MISSOURI
UNITED STATES OF AMERICA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) Cause No. 4:22-cr-00361-1 HEA |
| | ) |
| vs. | ) |
| | ) |
| JEREMIAH ALLEN, | ) |
| | ) |
| Defendant. | ) |

**<u>DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE FROM ADVISORY
SENTENCING GUIDELINES PURSUANT TO 18 U.S.C. § 3553 (a) AND
SENTENCING MEMORANDUM</u>**

COMES NOW, Defendant Jeremiah Allen, by and through Counsel Mark J. Byrne, and hereby submits Defendant's Sentencing Memorandum to this Honorable Court. In addition, Defendant includes their Motion for a Downward Departure from the Advisory Sentencing Guidelines Pursuant to 18 U.S.C. § 3553(a). In support of its Memorandum and Motion(s), Defendant states as follows:

**<u>Introduction</u>**

The Plea Agreement between the Government and the Defendant provides that "…in exchange for the Defendant's plea of guilty and the agreements contained herein, either party may request a sentence above or below the applicable U.S. Sentencing Guideline Range (combination of total of Offense Level and Criminal History category), ultimately determined by the Court, pursuant to any chapter of the Guidelines, Title 18, United States Code, §3553, or any other provision or rule of law not addressed herein." (Doc. 151, p. 2). In addition, the parties agreed to provide notice of such a request at

1

least ten days prior to sentencing, and said notice was filed by Defendant on December 26, 2023. (Doc. 177).

## Section 3553(a) Factors

The Pre-Sentence Report (PSR) indicates that the total offense level in this case is 36, with a criminal history category of I, and therefore the guideline imprisonment range in this case is between 188 months and 235 months. (Doc. 167, Para. 78). 18 U.S.C. §3553(a) states, in pertinent part, that:

> "the Court shall impose a sentence, but not greater than necessary, to comply with the purposes set forward in Paragraph 2 of the subsection. The Court in determining the particular sentence to be imposed shall consider the nature and characteristics of the offense and the history and characteristics of the Defendant."

The purposes set forth in Paragraph 2 include the need for the sentence imposed:

> "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner…"

In this case, the history and characteristics of Jeremiah are extraordinary and warrant a sentence below the current Guidelines Range. And given the extraordinarily high Guidelines Range in this case, a sentence well below the current Guidelines Range would nevertheless still achieve the purposes of Section 3553(a)(2). Especially as it relates to protecting the public from further crimes of Mr. Allen, as well as providing Mr. Allen with needed educational and vocational training.

Jeremiah is 19 years old, and he has no prior criminal history. In fact, Jeremiah does not even have a history of traffic offenses. He has been in federal custody since June of 2022.

While the crime with which Jeremiah was charged contemplates adult conduct, most of Jeremiah's characteristics are more similar to a juvenile than those of an adult.

Jeremiah was an 11th-grade high school student at the time he was arrested. He has not yet had the opportunity to graduate from high school, and he has not yet earned his G.E.D. Jeremiah suffers from significant learning disabilities, so much so that he was placed on an Individual Education Plan (IEP) to attend classes through the St. Louis County Special School District prior to the offense conduct in this case. Jeremiah has a formal diagnosis of Attention Deficit/Hyperactivity Disorder (ADHD), and he also suffers from undiagnosed, but readily apparent, developmental impairment.

Jeremiah's learning disabilities not only impeded his ability to succeed in school, but they also impeded his abilities in reaching typical adolescent milestones. For example, Jeremiah was never able to complete his driver's license test, nor has he ever successfully obtained even a state-issued identification card. While he does understand all aspects of his case, the charges against him, and the potential consequences of his plea, Jeremiah required repeated, extensive conversations and explanation from his counsel to completely understand these things. Many of Defense Counsel's clients lack education and suffer from some level of substance abuse, trauma, or other external factors that might impair their ability to understand this process, but Jeremiah's struggles extend well-beyond those typically seen with criminal defendants.

3

Growing up, Jeremiah was raised primarily by his mother.  They often struggled financially due to reliance on his mother's single income for their entire family.  Jeremiah's mother often had difficulties supplying basic necessities to her children, such as food, and they relied on food pantry and food stamp resources to survive.  In addition, Jeremiah can recall more than one occasion where their water and/or electricity was shut off by utility companies for non-payment.

Jeremiah also suffered from severe trauma at a young age.  At the age of five, Jeremiah was the victim of a vicious dog attack which left him with severe injuries as well as psychological trauma.  As a result of his injuries, Jeremiah required surgeries on his face, stomach, and ear.  To this day, Jeremiah still suffers from Post Traumatic Stress Disorder (PTSD) from the attack and the effects of the injuries.  In addition, Jeremiah suffers from high blood pressure, and he requires medication for that condition.

Beyond his medical issues, and despite his young age, Jeremiah also has an extensive history of substance abuse.  Jeremiah used alcohol, marijuana, and ecstasy on a regular basis starting as a juvenile and continuing until the time of his arrest in this case.  Living in a single-parent household, Jeremiah's mother was often forced to choose between prioritizing work or child care, and out of necessity there were often times when Jeremiah was left unsupervised in neighborhoods where juveniles have easy access to mood-altering substances.  Jeremiah was also vulnerable to the older peers peddling those substances, who often lured Jeremiah into participating with them in illegal activity.  Unfortunately, due to Jeremiah's learning disabilities, he was an easy target for peers who involved him in their criminal activities by taking advantage of his naivete.

4

While Jeremiah's culpability is the lowest of those involved, he understands and accepts responsibility for his role in this offense, and he deeply regrets the tragic effects of his involvement.

Jeremiah was foolish to trust his peers. He believed nobody would get hurt, and as they made the plan to run out on the fare, he never paid any attention to the possibility of his friends using their guns to escape with the money. That's why he sat in the front seat, unarmed, in the potential crossfire as the tragedy unfolded.

But that does not change the fact that he should have known better. He should never have agreed to the plan to try to skip out on the cab fare. He should have known that the other boys might be willing to use their guns to get the fare back. He should have known that his involvement would embolden the other boys, that it would put them all in more danger. He should have never agreed to the scheme.

He also knows that he should have been a voice of reason. He should have done something to help the victim, or calm everyone down. He knows that he should have done something, anything, after the shooting to call authorities to help the victim or bring the shooter to justice. While Jeremiah undoubtedly has a very difficult time thinking on his feet and communicating his thoughts in a nuanced way, he still knows that he could have done something to prevent this tragedy from happening.

Jeremiah's conduct following the events in this case also demonstrates that he is not a danger that the public needs protection from, even if he receives a sentence well-below the Guidelines Range in the PSR.

5

Jeremiah did not possess or use any weapons during the offense, and he did not attempt to use any physical force against the victim. He also did not resist arrest or use any violence during his contact with law enforcement. While Jeremiah's actions certainly elevate him beyond the level of a mere witness to a crime, his involvement was significantly less dangerous than the actions taken by the others in the car. In short, there is no indication from the facts of the case relevant to Jeremiah that a lengthy period of incarceration is necessary to protect the community from him.

Jeremiah's history and characteristics also demonstrate that he would likely benefit from educational and vocational training. He was unable to graduate high school due to this arrest, and he will certainly need his G.E.D. moving forward to have any success following incarceration. Jeremiah would also benefit from secondary education, such as community college or vocational training, to make him more employable and successful following his release from custody.

This Court could certainly recommend that Jeremiah receive such opportunities in the Bureau of Prisons, but such programs can be completed in a relatively low amount of time. An extended period of incarceration, such as the Guidelines Range in this case, is not necessary to complete these programs.

An individual like Jeremiah with significant learning disabilities may also require more individualized education than BOP is equipped to provide. In addition, Mr. Allen's intellectual disabilities may qualify him for disability benefits, and he would likely benefit from some level of mental evaluation and/or the assistance of a caseworker who can assist Mr. Allen with seeking assistance or applying for public benefits to avoid the

6

pitfalls of poverty and unemployment. While this Court may be able to recommend placement at a facility with mental health resources, Mr. Allen will only receive limited long-term support from BOP staff. The U.S. Probation Office, however, is much better-equipped to connect Mr. Allen with community resources to assist him in this manner. So in the event that this Court is willing to enter a sentence below the Guidelines Range, Jeremiah would undoubtedly benefit from a period of supervised release that includes conditions cognizant of his intellectual disability.

In sum, while Defendant adamantly agrees that his Guidelines calculations in his PSR are correct and consistent with the law, his offense level results in a Guidelines Range that is excessive under these circumstances.

## **Conclusion**

For the reasons above Counsel strongly believes that Mr. Allen's history and characteristics should be taken into consideration when considering an appropriate sentence for the Defendant. Specifically, Mr. Allen respectfully requests that this Honorable Court consider a sentence well-below the advisory guidelines range, and that this Court impose a term of months sufficient but not greater than necessary to achieve the statutory goals of Section 3553(a).

WHEREFORE, for the foregoing reasons, the Defendant respectfully requests that the Court grant his request, and any other relief this Court deems just and proper.

Respectfully Submitted,

FISCHER & BYRNE, L.L.C.

*/s/ Mark J. Byrne*
MARK J. BYRNE, #53118MO
130 S. Bemiston Ave., Ste. 303
Clayton, MO 63105
(314)231-0777 Phone
(844) 273-9163 Fax
Mark@fischerandbyrne.com

8

## **CERTIFICATE OF SERVICE**

      The above-signed document was filed via-electronic filing to the District Court of Eastern Missouri, as well as, the United States Prosecuting Attorney's Office on this 31st day of December, 2023.